attorney-general or district attorney, is given by section 2058 of the Code of Civil Procedure.

Our conclusion is that the motion to dismiss the appeal should be denied, and the order appealed from reversed. If the judgment has been satisfied, that fact is, of course, a bar to any proceedings under it.

BARKER, HAIGHT and BRADLEY, JJ., concurred.

---

## Supreme Court—General Term—First Department.

### *May,* 1887.

## PEOPLE v. SHEPPARD.

### ABDUCTION.

Upon the trial of defendant for the abduction of a female under sixteen years of age, the female alleged to have been abducted, during her acquaintance with defendant at the time of the alleged abduction, had worn a long dress with her hair coiled on top of her head, was put upon the witness stand in short clothes with her hair braided in a child-like way for inspection by the jury as to her age, *Held,* error.

An entry of the date of the birth of a child made by the father in a family Bible is not admissible to prove the date of such birth where the father is living, and no effort to find and produce him is shown.

APPEAL by Frank Sheppard, defendant and appellant, from judgment of the Court of General Sessions, of New York, Hon. Rufus B. Cowing, president, convicting defendant of abduction.

The indictment charged that the defendant on the third day of August, 1886, at the city and county of New York, did feloniously take, receive, harbor and use one Mamie Sherman, a female under the age of sixteen years, for the purpose of sexual intercourse, he not being her husband.

The evidence for the prosecution upon which the verdict was based was as follows: ·

Mary E. Sherman, the female alleged to have been abducted, testified that she was fifteen years of age in February, 1866; she had known the defendant since September, 1885, and he was not her husband; she and the defendant both worked in the shop of the Manhattan Silver Plate Company.

On the third of August, 1886, she went on a excursion to Riverview Park. After leaving the boat, upon its return to the city, defendant asked her if she would go with him and stay with him that night — that his wife was in the country—that he was going to Pittsburg and send for his wife and take witness with him. Instead of taking her to her uncle in Jersey City, defendant took her to number 77 Elizabeth street, in New York city. A colored woman showed them to a bedroom upstairs. They went to the room, both undressed and went to bed. Defendant left the gas lit, but at witness' request got up and put it out. Defendant asked her to let him have connection. She said no, at first. He said he would not force her in any way, and she consented. Defendant had connection with her that night and again in the morning.

Defendant was the only person with whom she had ever had sexual intercourse, and this was the first and only time she had had connection with any man.

Frances Schneider, testified : Witness is the aunt of Mary Sherman, the complaining witness, who had resided with her in Brooklyn for about five years—since about the time her mother died. On the 3d of August, 1886, witness, her husband, Mamie and witness' little boy went on the excursion above referred to. Witness saw defendant on the dock. They all went aboard the boat together. Defendant took witness' basket, escorted her to where his sister was, and told her to be all together. Witness left the boat at Brooklyn, Mamie remained on board the boat.

Witness did not again see the defendant until the fifth of August, when he came to her house in Brooklyn. He came to the door, knocked, and witness opened the door. The first word he said was, " Is Mamie home ? " Witness said, " Yes;

she is home, but she was not home all last night or all morning." He said, " Where is she now ? " Witness said, " Mamie is gone to work."   Defendant said he was glad she was at the shop, that she went to work ;   Witness told him she had to go up to her sister's, Mrs. Smith's, to get Mamie ; he said, " All right ; if Mamie is to work, I shall go to work in the morning ;" then he said, " I come to tell you that Mamie was with me all night, that I had Mamie with me ; I don't want you to blame the girl for anything at all ; Mrs. Schneider, don't whip the girl, don't scold her, don't do anything to her, it was all my fault that the girl staid out all night."

He further told witness " In case there is anything the matter with Mamie, I will see to everything, no matter what is needed ; I will look out for everything ; I have been with Mamie, and I have got to go with Mamie again, I cannot do without her ; I have a feeling within me, what I did I have to go again, I cannot keep away from the girl." Witness said, " Mr. Sheppard, think of your poor wife and child, if your wife hears of it."   He said, " My wife don't trouble me, it is Mamie I have got to see to and not my wife and child."

Witness said, " Mr. Sheppard, if this comes out you might have two years."   He said, " *No, not two years, but there is five years staring in my face* where I am sitting now, and I am willing to suffer what I did to this girl."

To sustain the allegation in the indictment as to Mamie Sherman's age the people offered in evidence an entry in a certain Bible, as follows : " Children : Mary Louise, born February 19, 1871."

It was shown by the testimony of Mamie Sherman that the entry was in the handwriting of her father, John Henry Sherman.   She had often seen him write and knew his handwriting ; nobody but her father ever handled or wrote in the Bible.   Her father had gone away five years ago, since which time she had never seen or heard from him.   That the Bible produced in court she had seen in the house where she resided with her father and mother in Jersey City, nearly five years before ; by the testimony of Jacob Meyers, who identi-

fied the Bible as the " Sherman Bible," that John Henry Sherman, the father of Mamie Sherman, was the owner of the Bible ; the Bible had always been in his custody since the death of Mamie Sherman's mother; it was kept in the family and came into his possession upon Mrs. Sherman's death. He had always had it, and took care of it for the children. It was also shown that Sherman had deserted his family five years before, and gone to work on the Pennsylvania railroad. No proof of his present whereabouts was given, although he was alive.

Whereupon the entry above set forth duly admitted in evidence against defendant's objection and exception.

The defense admitted the sexual intercourse, but claimed that the defendant honestly believed, and had good reason to believe, the girl Mamie Sherman, to be above the age of sixteen at the time of the offense, and in support of this preposition introduced evidence of divers declarations by the girl to the defendant and others that she was above the age of sixteen years, and also her appearance, dress, etc., to the same purpose, and especially that Mamie Sherman, a well-developed, robust, strong and healthy young girl, had, for over a year before the trial, been in the habit of wearing dresses touching the ground; she had always had worn her hair coiled on the top of her head and attired herself as young women are usually attired.

However, during the trial, she was dressed in short child's dress ; her hair was braided in two braids and permitted to hang down her back.

The declarations that she was over sixteen were admitted by the girl, but she swore that she did not intend to satisfy the curiosity of those who wanted to know her age, and therefore told what was false.

The only question of fact in the case was the age of the girl, and upon the point the jury had no testimony of the girl, Mrs. Schneider, the aunt, and the entry in the family Bible, in addition to which the learned judge in his very able and fair charge, called their attention to the provisions of

§ 19 of the Penal Code, relating to the production of a child for personal inspection whenever it becomes necessary so to do to determine the age.

BRADY, J.—The defendant was indicted under section 282 of the Penal Code for that he did feloniously take, receive, harbor and use one Mamie Sherman, who was then and there a female under the age of sixteen years, to wit, of the age of fifteen years, for the purpose of sexual intercourse; he, the said Frank Sheppard, not being then and there the husband of the said Mamie Sheppard; against the form of the statute in such case made and provided.

The section referred to declares that a person who takes, receives, harbors or uses a female under the age of 16 years for the purpose of sexual intercourse, not being her husband, is guilty of abduction. The intercourse having been established by proper proof, or admitted, as it was in this case, the prosecution were bound to show beyond reasonable doubt and by proper evidence the age of the complaint.

The complaint who had formerly worn a long dress with her hair so arranged so as to rest upon the top or her head, was put upon the witness stand in short clothes with her hair braided in a childlike way for inspection by the jury as to her age under the provisions of law permitting that ceremony. Whether in the administration of the criminal law such a device was justifiable may perhaps be a matter of taste, but the principles of natural justice would seem to dictate the propriety of presenting the complainant in a garb similar to that in which she was seen by the defendant, and particularly as the central question of the case turned upon her age. In this case the propriety of the course suggested would seem to be the more impressive from the facts that she herself (as she admitted during her cross-examination) had proclaimed herself to be over 16 years of age, not only to the defendant, but to others; and that she was also shown to have used long dresses with her hair arranged upon the top of her head, the effect of which was to make her look much older

than she did in the garb in which she appeared before the jury.

We are not now dealing with the great value of the section under which the conviction was had for the preservation of the virtue of the young. We are simply considering the practical administration of criminal justice by a strict observance of its rules of evidence as we ought, in view of the grave consequences to the defendant resulting from a conviction. This seems to be peculiarly our duty, since it appears that the short dress of the complainant was furnished by the society for the prevention of cruelty to children (a society of great usefulness) even though it was not intended by the circumstances mentioned to affect the jury in any possible respect. Perhaps in the view that is taken of the appeal it may not be at all important, but it may be that the intention of the society being thus called to the matter, there will be no cause for even suggestion on the subject in the future.

Upon the trial it appeared that the father of the complainant was living. Notwithstanding which, an entry in what was said to be the family Bible as to the time of the birth of the complainant was admitted in evidence, against the strenuous objection of the appellant's counsel. We have not been referred to any authority which justified that proceeding. On the contrary, it appears that in one case cited on behalf of the people, viz.: the Berkeley Peerage case, 4 Camp. 431, the father of the infants whose ages were in question, was dead. And in Phillips on Evidence (4 Am. Ed., with Cowen and Hill's notes) at p. 255, it is stated that although "An entry in a family Bible, has been considered to derive credit from the circumstances of its being entered in a book which is kept as the ordinary register of families, and as admissible, therefore, on account of its publicity in the family, without proof that such entry was made by a member of the family," it is nevertheless said to be hearsay evidence admissible in matters of pedigree only.

The rule is distinctly stated in Greenleaf on Evidence, section 104, as follows :

" An entry by a deceased parent or other relative made in a Bible, family missal, or any other book, or in any document or paper, stating the fact and date of the birth, marriage or death, of a child, or other relative, is regarded as a declaration of such parent in a matter of pedigree.

Although it is stated in the margin to have been held that the declarations of the deceased parent as to the place of birth of a child were inadmissible, this case involves no question of pedigree.

The admission of the family Bible was therefore error.

It may probably be claimed that it was properly received for the reason that the whereabouts (to use the language of the learned counsel for the people) of the father were not known, that he had deserted his family and it was impossible to bring it any closer to him.

It appears in the case that after his wife's death, he left New York to work on some road in Pennsylvania. But the record does not disclose any effort on the part of any person connected with the prosecution to discover the *locus in quo* of the father. *Non constat* but that he might have been in the city of New York. This is not regarded as a sufficient reason for admitting the Bible in contravention of the established rule as shown in the citations made.

It is declared in section 527 of the Code of Criminal Procedure that an appellate court may order a new trial if satisfied that justice requires it whether any exception was taken or not in the court below.

We think that for the reasons given, injustice was done and that a new trial should be ordered.

VAN BRUNT P. J., and DANIELS, J., concur.

NOTE.—The belief of defendant that the abducted female was over sixteen years of age, is immaterial. *People* v. *Stott*, 3 N. Y. Crim., 306.